COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Benton and Clements
Argued at Chesapeake, Virginia


JEFFREY SCOTT BLANEY

MEMORANDUM OPINION* BY
v.    Record No. 2571-99-1      JUDGE JEAN HARRISON CLEMENTS
APRIL 3, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge

Carolyn V. Grady (Epperly, Follis & Schork,
P.C., on brief), for appellant.

Amy L. Marshall, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Appellant Jeffrey Scott Blaney was convicted in a jury trial

of statutory burglary, grand larceny, possession of burglary or

larceny tools, and solicitation to commit malicious bodily injury.

On appeal, he contends (1) the evidence was not sufficient to

sustain the convictions and (2) the trial court erred in denying

his motion to appoint new counsel or grant him a continuance of

trial so he could represent himself.  For the reasons that follow,

we affirm appellant's convictions.

As the parties are fully conversant with the record in this

case and because this memorandum opinion carries no precedential

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

value, this opinion recites only those facts necessary to a disposition of this appeal.

### A.  SUFFICIENCY OF THE EVIDENCE

When the sufficiency of the evidence is challenged on appeal, we review the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1987).  We may not disturb the conviction unless it is plainly wrong or unsupported by the evidence.  Sutphin v. Commonwealth, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).  We are further mindful that the "credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the factfinder's determination."  Keyes v. City of Virginia Beach, 16 Va. App. 198, 199, 428 S.E.2d 766, 767 (1993).

Blaney initially contends that the evidence was insufficient to support his larceny and burglary convictions because there was no evidence that he broke into the victims' home and stole property.  The evidence, he argues, merely showed that he was later in possession of the stolen bicycle, which alone was not sufficient to permit the jury to infer that he committed the burglary.  He also argues that even if such an inference was permitted, his evidence was sufficient to rebut the inference of larceny and burglary.

-

"At common law, larceny is the taking and carrying away of the goods and chattels of another with intent to deprive the owner of the possession thereof, permanently." Lund v. Commonwealth, 217 Va. 688, 691, 232 S.E.2d 745, 748 (1977). Code § 18.2-95 provides that grand larceny includes "larceny not from the person of another of goods and chattels of the value of $200.00 or more." Furthermore, "the unexplained possession of recently stolen goods permits an inference of larceny by the possessor." Bright, 4 Va. App. at 251, 356 S.E.2d at 444. In other words, "'[p]ossession of goods recently stolen is prima facie evidence of guilt of the crime of larceny, and throws upon the accused the burden of accounting for that possession.'" Hope v. Commonwealth, 10 Va. App. 381, 385, 392 S.E.2d 830, 833 (1990) (en banc) (quoting Fout v. Commonwealth, 199 Va. 184, 190, 98 S.E.2d 817, 821 (1957)). For the larceny inference to arise, the Commonwealth must prove that the accused was in exclusive possession of the recently stolen property. Best v. Commonwealth, 222 Va. 387, 389, 282 S.E.2d 16, 17 (1981).

In a burglary prosecution, the Commonwealth can establish a violation of Code § 18.2-91 by "(1) proving that goods were stolen from a house which was broken into; (2) justifying the inference that both offenses were committed at the same time, by the same person, as part of the same criminal enterprise; and (3) proving that the goods were found soon thereafter in the possession of the accused." Bright, 4 Va. App. at 251, 356 S.E.2d at 444. The

-

unexplained or falsely denied exclusive possession of stolen goods shortly after the burglary "has the same efficiency to give rise to an inference that the possessor is guilty of the breaking and entering as to an inference that he is guilty of the larceny." Drinkard v. Commonwealth, 163 Va. 1074, 1083, 178 S.E. 25, 28 (1935).

To prove beyond a reasonable doubt that the possession of the stolen property was exclusive, the Commonwealth's evidence must show "that the accused was consciously asserting at least a possessory interest in the stolen property or was exercising dominion over the stolen property." Best, 222 Va. at 389, 282 S.E.2d at 17.

In this case, Blaney does not dispute on appeal that the Commonwealth's evidence was sufficient to establish that the victims' home was broken into without the permission of the victims. Likewise, he does not dispute that the evidence was sufficient to show that a larceny occurred as a result of the break-in and that both offenses were committed at the same time, by the same person, as part of the same criminal enterprise. Rather, Blaney argues solely that his recent possession of the stolen property was not sufficient evidence to show he committed the burglary and larceny. The issue, then, is whether it was proper for the jury to infer guilt from Blaney's recent possession of the stolen property.

-

Here, there is no direct evidence that links Blaney to the burglary of the home and the larceny of the stolen property. However, the evidence did establish that on October 30, 1996, the home of Lori Irvin and Jon Rowe in Virginia Beach was broken into between 12:05 p.m. and 12:15 p.m. A pair of pliers was outside on the front porch before the break-in. When Jon Rowe discovered the burglary, he found the glass in the front door broken out and noticed that the pliers were lying just inside the door on the floor amidst the broken glass. Jon Rowe also discovered that the mountain bicycle of his father, Morris Rowe, was missing and Irvin's room was ransacked. Nothing other than the bicycle was taken.

A short time after 1:00 p.m., Morris Rowe received a call from his son advising him of the burglary and that his bicycle had been stolen. Suspecting that someone in one of the nearby apartment complexes might have committed the crimes, Morris Rowe took his camera and a gun and drove near Chapel Lake Apartments on his way to his son's house. Mr. Rowe saw someone, whom he later identified as Blaney, coming out of the woods pushing Mr. Rowe's bicycle. The wooded area was approximately 150 feet from the Irvin/Rowe residence. Blaney then jumped on the bicycle and rode off. Mr. Rowe followed Blaney to a trash dumpster where Blaney's car was parked. A teenage boy was in the passenger seat of the car. Mr. Rowe parked his car diagonally behind Blaney's car.

As Blaney was lifting the bicycle onto a bike rack on Blaney's car, Morris Rowe told Blaney the bicycle was his. Blaney approached Rowe, at which point Rowe picked up his gun and told Blaney not to come any closer. Blaney then got back on the bicycle and rode off through the Chapel Lake Apartments complex. Rather than chase Blaney, Rowe repositioned his car directly behind Blaney's car, blocking it in. Blaney's car was running and Rowe noticed the boy move toward the driver's seat. Taking his gun, Rowe got out of his car and walked to the driver's side door of Blaney's car. He saw the teenager rummaging for what Mr. Rowe suspected might be a weapon. Mr. Rowe put the barrel of the gun to the teenager's head and told him to put his hands on the steering wheel, which he did.

Blaney then returned, still riding Rowe's bicycle. He screamed to the boy in the car, "run over him, ram him, run over him, run over him." As the boy revved the engine, Blaney shouted, "he won't shoot." Blaney then threw down the bicycle and started toward Mr. Rowe. In response Mr. Rowe cocked his gun and pointed it at Blaney. Blaney stopped, told Mr. Rowe he could have his bicycle back, and added: "Just let me go. I didn't take anything else. I didn't take anything else. If I did, you know, I'll make it up to you. I'll give you the money. I'll give you anything. Just let me go." Mr. Rowe told him to get the bicycle. Blaney then took off his tee shirt, wiped the fingerprints off the bicycle, and set the bicycle back down on the ground. Mr. Rowe

-

got back in his car and backed it up. Blaney got in his car, and the teenager and he drove off.

We find that this evidence established that Blaney was in exclusive possession of Morris Rowe's stolen bicycle. Blaney alone was exercising dominion over the stolen bicycle during his confrontation with Mr. Rowe. Furthermore, this exclusive possession, occurring approximately one to one and a half hours after the commission of the crimes, was sufficiently recent to establish a prima facie case of larceny and burglary and to justify inferences by the jury that Blaney was the thief and burglar who broke into the Irvin/Rowe home and stole Morris Rowe's bicycle.

Blaney, however, argues that the evidence he presented was sufficient to rebut the inferences in this case. Blaney, who had been convicted of at least twelve felonies and one misdemeanor, testified on his own behalf. He said that a young male, whose name he did not know, called him and offered to sell him a bicycle. He was to meet the caller "somewhere" on Laskin Road. As he drove down Laskin Road, he saw a guy near a trash dumpster with a bicycle. Blaney took the bicycle for a test ride "to see if it was worth buying." When Morris Rowe confronted him, Blaney negotiated with him because he was scared. At trial, Blaney denied he stole the bicycle or that he ever told Morris Rowe that he did. He explained that he wiped his fingerprints off the

-

bicycle because he realized at that point that the bicycle was probably stolen and he did not want to get involved.

Blaney's sister-in-law also testified on his behalf. She stated that Blaney, who was living with her and her husband at the time, received a telephone call that morning from a young male. Soon thereafter, Blaney left saying he was going to buy a bicycle.

The trier of fact is not required to accept a party's evidence in its entirety, but is free to believe or disbelieve in part or in whole the testimony of any witness. Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991). Thus, the jury was not required to accept Blaney's testimony as to why he had possession of the recently stolen bicycle. Furthermore, the jury could reasonably conclude that Blaney's statement to Morris Rowe, "I didn't take anything else," and his conduct in fleeing the scene and wiping off the bicycle to remove fingerprints implicated him as the burglar and thief. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). We hold, therefore, that the evidence was sufficient to prove beyond a reasonable doubt that Blaney committed the subject burglary and larceny.

Blaney next contends that the evidence was insufficient to support his conviction for possession of burglary or larceny

-

tools.  According to him, there was no evidence that a tool was used in the break-in or that pliers are a tool of burglary or larceny.  Furthermore, he argues, the Commonwealth failed to prove his intent to commit burglary.

To convict Blaney of a violation of Code § 18.2-94, the Commonwealth was required to prove that he possessed "tools, implements or outfit, with intent to commit burglary, robbery or larceny."  Mere possession of a tool alone is not prohibited, for such "'may be, and usually are, designed and manufactured for lawful purposes.'  The gravamen of the offense arises from the possessor's 'intent to use' these 'common, ordinary' objects for a criminal purpose specified by statute, burglary, robbery, or larceny."  Moss v. Commonwealth, 29 Va. App. 1, 3, 509 S.E.2d 510, 511 (1999) (quoting Burnette v. Commonwealth, 194 Va. 785, 790, 75 S.E.2d 482, 486 (1953)).

Irvin and Jon Rowe testified that a pair of pliers was kept outside on the front porch before the break-in.  Jon Rowe found them inside the house on the floor amidst the broken glass of the front door after the break-in.  In this case, the jury could reasonably infer that the pliers were used by the possessor to effect the breaking and entry.  Likewise, the evidence being sufficient to convict Blaney of burglary, it was also reasonable for the jury to infer that the burglary was accomplished by Blaney with the use of the pliers.  We hold that this evidence was

-

sufficient to prove beyond a reasonable doubt that Blaney was in possession of burglary or larceny tools.

Finally, Blaney contends that the evidence was insufficient to support his conviction for solicitation to commit malicious bodily injury. Although Blaney denies the statements attributed to him by Morris Rowe, he argues that any statements he made were caused by fear resulting from the words and actions of Morris Rowe while he had his gun drawn. Therefore, Blaney argues, the evidence was insufficient to show that he intended to induce the teenage boy to commit a crime.[1]

Code § 18.2-29 makes it unlawful for any person to command, entreat, or otherwise attempt to persuade another to commit a felony. Morris Rowe testified that, when Blaney returned to the scene, after having earlier fled, and saw Rowe pointing a gun at the teenager, Blaney screamed to the boy, "run over him, ram him, run over him, run over him," referring to the boy running over or ramming Rowe with the car. Then, as the boy revved the engine, Blaney shouted, "he won't shoot," referring to the gun pointed at the boy's head by Rowe.

The jury, which had the opportunity to hear and observe the witnesses on the stand and weigh the evidence accordingly, could

---

[1] Blaney also argues on appeal that he acted in self-defense. However, this argument was never presented to the trial court. Thus, it was not properly preserved, and Rule 5A:18 bars our consideration of it on appeal. Furthermore, we find no reason to invoke the "good cause" or "ends of justice" exceptions.

-

reasonably infer from the testimony of Morris Rowe, whom it chose to believe, that Blaney intended to incite the boy to hit Rowe with the car and thereby cause him serious injury. We hold, therefore, that the evidence was sufficient to prove beyond a reasonable doubt that Blaney solicited another to commit malicious bodily injury.

B.   MOTION FOR NEW COUNSEL OR CONTINUANCE OF TRIAL

In September 1998, Blaney was indicted on the charges of which he was subsequently convicted. Blaney and his court-appointed attorney appeared for trial with a jury on August 2, 1999. In some of his answers on the "Not Guilty Questionnaire," Blaney expressed dissatisfaction with his attorney and represented that he was not ready for trial. He requested that the court appoint a new attorney for him. The trial court conducted a hearing of approximately forty-five minutes. Blaney's motion for substitution of attorney was denied. Thereafter Blaney asked for a continuance so that he could represent himself. When the motion for a continuance was denied by the trial court, Blaney withdrew his motion to represent himself and proceeded to trial with his court-appointed attorney. Blaney contends that the trial court erred in denying his motions.

Whether an indigent defendant's court-appointed attorney should be discharged is a matter that lies within the sound

-

discretion of the trial court, and its ruling will not be reversed on appeal unless it is plainly wrong.  <u>Kinard v. Commonwealth</u>, 16 Va. App. 524, 526, 431 S.E.2d 84, 85 (1993) (citing with approval <u>United States v. Gallop</u>, 838 F.2d 105, 108 (4th Cir. 1988)).  Furthermore, a defendant cannot have his court-appointed attorney replaced unless he shows "good cause."  <u>Id.</u>

Likewise, "[w]hether to grant a continuance of a trial is a matter that lies within the sound discretion of a trial court, and its ruling will not be reversed on appeal unless it is plainly wrong."  <u>Cardwell v. Commonwealth</u>, 248 Va. 501, 508, 450 S.E.2d 146, 151 (1994).  "Absent a showing of prejudice to a defendant by the denial of a continuance, an appellate court will not find that a trial court abused its discretion."  <u>Id.</u> at 509, 450 S.E.2d at 151.

The trial court chose not to believe or accept Blaney's stated complaints and reasons for seeking a new attorney and a continuance.  Instead, the court made specific findings and ruled that there was no good cause for replacing Blaney's court-appointed attorney and that Blaney's motions, "at this late hour," were for the purpose of delay.  The court's rulings were not plainly wrong.  Moreover, Blaney made no showing that he was prejudiced by the denial of a continuance.

We hold, therefore, that the trial court did not abuse its discretion.

-

Accordingly, we affirm appellant's convictions.

Affirmed.