COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Senior Judge Frank

UNPUBLISHED

LORIN COTTON

v.     Record No. 1255-20-1

CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
AUGUST 17, 2021

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Bonnie L. Jones, Judge

(Charles E. Haden, on brief), for appellant.

(Cheran Cordell Ivery, City Attorney; L. Olivia Wiggins, Assistant
City Attorney; Rachel Madden, Guardian *ad litem* for the minor
child; Madden Law, PLLC, on brief), for appellee.

Appellant, Lorin Cotton, appeals the circuit court's order adjudicating that her stepchild,

J.M.R.C., was abused or neglected. Appellant argues that the circuit court abused its discretion by

denying her motion for a continuance. Appellant further asserts that the circuit court erred by

finding that J.M.R.C. was abused or neglected and that the evidence was sufficient to remove

J.M.R.C. from the home. Upon reviewing the record and briefs of the parties, we conclude that

this appeal is without merit. Accordingly, we summarily affirm the decision of the circuit court.

See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

On appeal, "we view the evidence in the light most favorable to the prevailing party, in this case, the Department, and grant to it all reasonable inferences fairly deducible from the evidence." King v. King George Dep't of Soc. Servs., 69 Va. App. 206, 210 (2018) (quoting C. Farrell v. Warren Cnty. Dep't of Soc. Servs., 59 Va. App. 375, 420-21 (2012)).

Appellant is married to Bryan Cotton (father), who is J.M.R.C.'s biological father. The City of Hampton Department of Social Services (the Department) became involved with the family in 2016 and 2017 due to concerns associated with father's son, who is now an adult. Father admitted that child protective services had been involved with the family previously in California due to abuse and neglect.

In the early morning hours of November 24, 2019, the Department received a report that J.M.R.C. had been injured during an altercation at her home. Appellant had taken then-fifteen-year-old J.M.R.C.'s laptop after discovering J.M.R.C. allegedly had had "inappropriate sexualized conversations" with adult men. J.M.R.C. ran to the bathroom, and appellant and father followed her. Father grabbed J.M.R.C. by her hair, and both appellant and father "forcibly removed" her from the bathroom. Father told J.M.R.C. to leave, so she and her adult sister ran to a nearby restaurant and called 911.

J.M.R.C. was transported to the hospital, where she reported sustaining injuries due to father "strangling and punching her." J.M.R.C. suffered two black eyes, a broken nose, and

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

abrasions around her neck. Upon reviewing the hospital records, the Department discovered that hospital personnel noted J.M.R.C. had "wounds that seem to be at different stages of healing."

The Department informed father that given the nature of the report, J.M.R.C. could not be released to his care upon her discharge from the hospital. Father refused to sign the Department's safety plan but agreed to sign respite paperwork.

A couple of days later, the Department met with father and appellant at their house. Father and appellant claimed that neither of them had assaulted J.M.R.C., but that she had "inadvertently" caused the injuries to herself. Father reported that J.M.R.C. had broken her nose while hospitalized at Poplar Springs Hospital three months earlier, and she "likely reinjured herself" during the altercation with father.

Although J.M.R.C. initially refused to participate in the investigation when the Department interviewed her, J.M.R.C. confirmed that father had injured her during the altercation. J.M.R.C. indicated that father had "a history of being . . . physically abusive."

At a family partnership meeting in December 2019, father and appellant explained that J.M.R.C. had tried to escape through the bathroom window. They grabbed her to prevent her from climbing out of the bathroom window. They reported that J.M.R.C. was kicking, and "[a]t some point [J.M.R.C.] fell back into the tub." Father believed that J.M.R.C. "accidentally kneed herself in the nose."[2] Father and appellant maintained that J.M.R.C. had a "history of self-harming behavior." They were concerned that J.M.R.C. might harm herself if she were left alone in the bathroom. They also believed that J.M.R.C. had not been taking her medication.

On January 9, 2020, the Department placed J.M.R.C. in foster care and filed a petition for emergency removal. The City of Hampton Juvenile and Domestic Relations District Court (the

_____

[2] They did not repeat their claim that J.M.R.C.'s injuries arose from her hospitalization at Poplar Springs.

JDR court) entered an emergency removal order, subsequently followed by a preliminary removal order. On February 11, 2020, the JDR court adjudicated that J.M.R.C. was abused or neglected. On March 12, 2020, the JDR court entered a dispositional order, which appellant appealed.

Appellant's appeal was scheduled to be heard on October 23, 2020. Appellant was not present but sent a letter to the circuit court requesting a continuance because her daughter was having surgery that day.[3] The circuit court denied appellant's motion for a continuance and heard the Department's evidence.

The Department submitted J.M.R.C.'s hospital records, including the doctor's notes indicating "[c]oncern for domestic abuse\child abuse as patient has wounds that seem to be in different stages of healing and a story consistent with physical assault by her father." In addition, the Department offered evidence that it had contacted relatives and J.M.R.C.'s biological mother as possible placements before J.M.R.C. entered foster care but determined that there were no viable placement options.

After hearing the Department's evidence and the parties' arguments, the circuit court found that J.M.R.C. was abused and neglected. The circuit court further found that the Department "did all it could to find a less restrictive alternative for this child" than foster care. The circuit court then entered the adjudicatory order. This appeal followed.

---

[3] Counsel for all parties, including appellant and the biological parents, were present at the circuit court hearing.

ANALYSIS

Continuance request

Appellant argues that the circuit court abused its discretion in denying her motion for a continuance. Appellant asserts that she had a "valid and reasonable basis for making the continuance request."

"The decision of whether to grant a continuance is committed to the discretion of the circuit court." Shah v. Shah, 70 Va. App. 588, 593 (2019). "A party challenging a circuit court's denial of a motion for a continuance must demonstrate both an 'abuse of discretion *and* resulting prejudice[.]'" Bailey v. Commonwealth, 73 Va. App. 250, 265 (2021) (quoting Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34 (2007)).

At the beginning of the hearing, the circuit court advised the parties that "the stepmother contacted [the trial judge's] office with a letter about not being available . . . ." While acknowledging that the matter had been "pending on the court's docket for some time," appellant's counsel moved for a continuance because appellant's daughter, not J.M.R.C., was having surgery that was "an emergent situation." The Department objected to the continuance because it was the fourth continuance request and J.M.R.C. needed "some kind of permanency."[4] After hearing the parties' arguments, the circuit court denied appellant's continuance request.

The record reflects that appellant was aware of the hearing date. Appellant notified the circuit court the night before the hearing that she would not be available due to her daughter's surgery. Even if the circuit court had abused its discretion in denying the motion for continuance, appellant did not present, or proffer, any evidence to show that she was prejudiced

---

[4] Appellant had requested the first continuance because she had had surgery. Then, father requested a continuance because of a change in counsel; the Department acknowledged that the circuit court "ended up closing anyway because . . . the power went out or something." The guardian *ad litem* requested the third continuance because "she had a COVID quarantine letter."

by the court's decision. "'[A]bsent a showing of prejudice to [appellant] by the denial of a continuance,' we cannot find that the trial court abused its discretion" in denying appellant's motion for a continuance. Butler v. Culpeper Cnty. Dep't of Soc. Servs., 48 Va. App. 537, 544 (2006) (quoting Cardwell v. Commonwealth, 248 Va. 501, 509 (1994)); see also Bailey, 73 Va. App. at 266 ("Even if we were to conclude that no reasonable jurist would have denied the continuance request, the record before us fails to demonstrate the prejudice necessary to establish reversible error.").

Abuse and neglect

Appellant argues that the circuit court erred in finding that J.M.R.C. was abused or neglected. Appellant asserts that she and father forced their way into the bathroom to prevent J.M.R.C., who had a history of self-harming behavior, from hurting herself. Appellant further contends that the circuit court erred in finding that the Department had made reasonable efforts to prevent the removal and that there were "no alternatives less drastic than removal."

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

The "preponderance of the evidence standard is an appropriate standard for an abuse and neglect proceeding which may lead to temporary placement of the child." Cumbo v. Dickenson

Cnty. Dep't of Soc. Servs., 62 Va. App. 124, 130 (2013) (quoting Wright v. Arlington Cnty.

Dep't of Soc. Servs., 9 Va. App. 411, 414 (1990)).

An abused or neglected child is any child

> [w]hose parents or other person responsible for his [or her] care creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means, or creates a substantial risk of death, disfigurement or impairment of bodily or mental functions . . . .

Code § 16.1-228(1).

The Department presented evidence that there had been a physical altercation between J.M.R.C., father, and appellant on November 24, 2019. As a result of that incident, J.M.R.C. suffered a broken nose, two black eyes, and abrasions around her neck. J.M.R.C. reported to the Department and hospital staff that father had inflicted her injuries.

The circuit court was "very concerned" about the injuries that J.M.R.C. suffered during that incident, as well as additional injuries that were in "different stages of healing." The circuit court found the "facts of this case to be extraordinary." It rejected appellant's arguments that she and father were trying to restrain J.M.R.C. to protect her from self-harm. The circuit court noted that the family had a history with the Department and child protective services. Considering the totality of the evidence, the circuit court did not err in finding that the Department proved by a preponderance of the evidence that J.M.R.C. was an abused or neglected child.

In addition, the circuit court accepted the Department's evidence that it had "tried to find another place" for J.M.R.C. by investigating the biological mother and other relatives, but "[t]here were no relatives that could take the child." The circuit court found that appellant's and father's home was "not a safe place" for J.M.R.C. Credible evidence supported that finding. Accordingly, the circuit court did not err in finding that there were no less drastic alternatives to removing J.M.R.C. from her home.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.  Rule 5A:27.

<u>Affirmed.</u>