PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ORLANDO BRAD JONES,

       *Petitioner-Appellant,*

v.

SUSSEX I STATE PRISON,

       *Respondent-Appellee.*

No. 07-6705

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, Senior District Judge.
(3:04-cv-00183-REP)

Argued: December 2, 2009

Decided: January 15, 2010

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Michael and Judge King joined.

## COUNSEL

**ARGUED**: John Granville Douglass, UNIVERSITY OF RICHMOND, School of Law, Richmond, Virginia, for Appellant. Steven Andrew Witmer, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** William C. Mims, Attorney

General, Karen Misbach, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Orlando Brad Jones petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2006), alleging that the Commonwealth of Virginia violated his Fifth Amendment rights by punishing him twice for the same offense. The deferential review of state court judgments mandated by the Antiterrorism and Effective Death Penalty Act ("AEDPA") requires us to affirm the district court's denial of habeas relief.

I.

To better understand this case's procedural history and the parties' arguments, we must briefly set forth the nature of Jones's atypical constitutional claim. He contends that the Commonwealth violated his rights under the Double Jeopardy Clause of the Fifth Amendment *not* by subjecting him to multiple prosecutions for the same offense but by subjecting him to "multiple *punishments* for the same offense." *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (emphasis added).

When the government convicts a defendant for two crimes based on identical conduct, the Fifth Amendment requires that the sentencing court "determine whether the legislature . . . intended that each violation be a separate offense." *Garrett v. United States*, 471 U.S. 773, 778 (1985). If the legislature did intend each violation to be a separate offense, then the Double Jeopardy Clause provides no protection against multiple punishments. But if the legislature did *not* intend to punish the

same conduct twice, the Double Jeopardy Clause bars two or more punishments for the same offense, and thus "prevent[s] the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

"When the claim is made in relation to state offenses, federal courts are essentially bound by state court interpretations of state legislative intent on this score." *Thomas v. Warden*, 683 F.2d 83, 85 (4th Cir. 1982). That is because, when the charged offenses violate state law, the double jeopardy analysis hinges entirely on the state-law question of what quantum of punishment the state legislature intended. *See Sanderson v. Rice*, 777 F.2d 902, 904 (4th Cir. 1985) ("The Supreme Court has placed the state legislative definition of the crime at the heart of double jeopardy analysis."). Once a state court has answered that state-law question, "[t]here is no separate federal constitutional standard requiring that certain actions be defined as single or as multiple crimes." *Id.*

In *Brown v. Commonwealth*, 337 S.E.2d 711 (Va. 1985), a double jeopardy case, the Supreme Court of Virginia considered the intent of the Virginia General Assembly when a defendant is "accused of abduction by detention and another crime involving restraint of the victim, both growing out of a continuing course of conduct." *Id.* at 713. The *Brown* court held that the General Assembly intended to subject such a defendant to "separate penalties for separate offenses only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime." *Id.* at 713-14. This rule has since come to be known as the "incidental detention doctrine." *See, e.g.*, *Walker v. Commonwealth*, 636 S.E.2d 476, 478 (Va. 2006).

With this understanding of the double jeopardy and state law principles at issue in this case, we turn to the facts.

II.

On December 12, 2001, Jones donned a mask and, together with his cousin, robbed at gunpoint a McDonald's restaurant in Hampton, Virginia. The Commonwealth charged Jones with robbery, Va. Code Ann. § 18.2-58 (2009); abduction, *id.* § 18.2-48; wearing a mask in public, *id.* § 18.2-422; and two counts of using a firearm while committing a felony, *id.* § 18.2-53.1, one each for the robbery and abduction. The abduction-related charges stemmed from evidence that during the robbery—which lasted just ninety seconds—Jones directed McDonald's floor supervisor Anthony Williams to travel about twenty feet from the front cash register to the back cash register to retrieve money stored there. Jones pled not guilty to all five charges.

At the conclusion of the Commonwealth's case, defense counsel moved to dismiss the two abduction charges on the ground that "the abduction must be separate and apart from and not merely incidental to the restraint employed in the commission of the [robbery]." The trial court denied the motion on the merits, finding that two distinct robberies had taken place, one for each cash register. The trial court reasoned that, because the Commonwealth charged Jones only with the first robbery, and the abduction charge was incidental only to the second robbery, the Commonwealth did not violate double jeopardy principles because the abduction was not incidental to the charged robbery.

On September 24, 2002, the jury convicted Jones on all counts. The trial judge, following the jury's recommendation, sentenced Jones to thirty-four years in prison: five years for the robbery, three for using a firearm during the robbery, one for wearing a mask in public, twenty for the abduction, and five for using a firearm during the abduction. Thus, the abduction-related convictions accounted for twenty-five years of Jones's thirty-four year sentence.

Jones timely filed petitions for appeal, first in the Court of Appeals of Virginia and then in the Supreme Court of Virginia. In his supporting (identical) briefs to each court, Jones asserted the following as an assignment of error:

> The Trial Court erred in concluding that the abduction (and related firearm charge) could be sustained without a scintilla of evidence in the record to show intimidation or force in the movement of the victim from one cash register to the other cash register in the course of this robbery.

In the argument sections for this claim, Jones cited to *Brown* and described the claim in terms very similar to those used in that case: "The alleged abduction is not the type of case that the legislature envisioned as a separate offense from a crime such as this robbery, for it is intrinsic in the very act of this robbery." *Compare Brown*, 337 S.E.2d at 713 ("[I]n the enactment of the abduction statute the General Assembly did not intend to make the kind of restraint which is an intrinsic element of . . . robbery . . . a criminal act, punishable as a separate offense."). Jones did not explicitly refer to the Double Jeopardy Clause or the Constitution of the United States.

On July 16, 2003, the Court of Appeals of Virginia denied Jones's appeal without mentioning double jeopardy, the Constitution, or *Brown*. Instead, the court focused on the sufficiency of the evidence supporting the abduction charges. On December 2, 2003, the Supreme Court of Virginia summarily denied Jones's petition for appeal.

Jones, now proceeding *pro se*, filed with the state Supreme Court a petition for state habeas relief. This time, he explicitly alleged that his "conviction is in contravention of the Double Jeopardy Clause in the Fifth Amendment to the Constitution of the United States." The court denied Jones's state habeas petition, finding his double jeopardy claim procedurally barred under *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va.

1974), because Jones could have raised his double jeopardy claim on direct appeal, but assertedly did not do so.

On March 19, 2004, Jones—still *pro se*—timely filed this § 2254 petition in the United States District Court for the Eastern District of Virginia, raising several grounds for relief. The district court granted the Commonwealth's motion to dismiss all but Jones's double jeopardy claim, and appointed counsel to represent Jones in the proceedings. In its subsequent briefing as to that claim, the Commonwealth argued that the claim was (1) procedurally defaulted because it was not properly presented to and thus exhausted before the state courts; (2) not cognizable on federal habeas because it involved only a state-law question of "state legislative intent"; and in any event (3) meritless under Virginia's incidental detention doctrine. Although the Commonwealth did not cite to the deferential AEDPA standard of review in its brief to the district court, it drew upon that standard, arguing that, should the district court reach the merits of Jones's claim, "Jones would bear the burden of showing not merely that the state court's application of law was wrong, but that it was unreasonably wrong."

On March 30, 2007, the district court denied Jones's petition. The court refused to find Jones's double jeopardy claim procedurally barred, but held that punishing Jones for both robbery and abduction did not violate double jeopardy under Virginia's incidental detention doctrine. The court did not mention the AEDPA standard of review.

The district court subsequently granted Jones a certificate of appealability as to this issue, and Jones timely noted this appeal. We review a district court's denial of a § 2254 habeas petition "*de novo*, applying the same standard that the district court was required to apply." *Longworth v. Ozmint*, 377 F.3d 437, 443 (4th Cir. 2004). In opposing Jones's petition, the

Commonwealth presents three arguments—exhaustion, proce-dural default, and the merits—which we address in turn.[1]

### III.

The Commonwealth initially maintains that Jones failed to present (and so exhaust) his double jeopardy claim to the state appellate courts on direct appeal. The Commonwealth argues that Jones did not "exhaust[ ] the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(1)(A), because he neglected to expressly invoke the Double Jeopardy Clause before the Virginia appellate courts, and instead litigated only "a state law claim concerning the sufficiency of the evidence of the abduction and firearm counts." Resp. Br. 13. This argu-ment fails.

Of course, it is true that "[b]efore seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and internal quotation marks omitted); *see also Breard v. Pru-ett*, 134 F.3d 615, 619 (4th Cir. 1998). To provide the state with this opportunity, "the prisoner must 'fairly present' his claim in each appropriate state court . . . , thereby alerting that court to the federal nature of the claim." *Reese*, 541 U.S. at 29; *see also Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). The habeas petitioner must raise his claim before every available state court, including those courts—like the Supreme Court of Virginia—whose review is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999).

Moreover, the burden of demonstrating fair presentment

---

[1] On federal habeas as elsewhere, procedural questions "should ordinar-ily be considered first," before on-the-merits review. *See Lambrix v. Singletary*, 520 U.S. 518, 524 (1997); *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).

lies with the habeas petitioner, who must "do more than scatter some makeshift needles in the haystack of the state court record." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (internal quotation marks omitted). However, "it is not necessary to cite book and verse on the federal constitution so long as the constitutional substance of the claim is evident," *West v. Wright*, 931 F.2d 262, 266 (4th Cir. 1991) (internal quotation marks omitted), *rev'd on other grounds*, 505 U.S. 277 (1992), such that "both the operative facts and the controlling legal principles [are] presented to the state court." *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (internal quotation marks omitted).

Thus the Supreme Court has held that a "litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim . . . a *case deciding such a claim on federal grounds*." *Reese*, 541 U.S. at 32 (emphasis added). The Court drew no distinction between citation to a state—as opposed to a federal—case, so long as the cited case rested its holding on federal law. *Id.*; *see Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc) ("[F]or purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue."). Accordingly, our sister circuits have uniformly concluded that citation to such a state case, as a general matter, provides fair presentment of a federal constitutional claim. *See, e.g.*, *Jackson v. Edwards*, 404 F.3d 612, 618 (2d Cir. 2005); *Peterson*, 319 F.3d at 1158; *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999); *Barrett v. Acevedo*, 169 F.3d 1155, 1161-62 (8th Cir. 1999); *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995); *Scarpa v. Dubois*, 38 F.3d 1, 6-7 (1st Cir. 1994). *See also Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001) (finding that petitioner's citation to a state case "alerted the state court to his Sixth Amendment claim" and thus fairly presented the claim).

For example, in *Daye v. Attorney General of New York*, 696 F.2d 186 (2d Cir. 1982) (en banc), a nearly unanimous en banc Second Circuit held that the petitioner had exhausted his claim when he cited to "two state cases in which [the state's] highest court had analyzed similar contentions in [federal] constitutional terms" and where his claim was "within the ambit of a long line of cases" establishing this constitutional right. *Id.* at 195. The *Daye* court explained: "[I]f the courts of the state in question have themselves previously treated that fact pattern as appropriate for constitutional analysis, it would be unreasonable to suppose that they are not alert to constitutional considerations." *Id.* at 194; *see also Ellsworth*, 248 F.3d at 639.

Here, as in *Daye* and *Ellsworth*, Jones cited to a state case —*Brown v. Commonwealth*—that deals exclusively with federal double jeopardy law, and the Supreme Court of Virginia has since expressly recognized that its "ruling in *Brown* regarding incidental detention *only* applies when . . . the guarantee of double jeopardy may be implicated." *Walker*, 636 S.E.2d at 479 (emphasis added). Jones also alerted the state courts to the federal nature of his claim when he used clear double jeopardy language, inspired by *Brown*, in his briefs. Further, Jones presented a fact pattern—multiple punishments for abduction and a closely related crime—that Virginia courts have regularly considered appropriate for double jeopardy analysis. *See, e.g.*, *Brown*, 337 S.E.2d 711; *Jerman v. Dir., Dep't of Corr.*, 593 S.E.2d 255, 259-60 (Va. 2004); *Powell v. Commonwealth*, 552 S.E.2d 344, 360-61 (Va. 2001).

Finally, the Commonwealth itself recognized and addressed the double jeopardy issue in its opposing brief before the state Supreme Court, evidencing Jones's fair presentment of that claim. *See Smith v. Digmon*, 434 U.S. 332, 333 (1978) (per curiam) (finding that state's opposition in its brief to petitioner's constitutional claim in state court supported conclusion that petitioner had fairly presented that claim); *Daye*, 696

F.2d at 192 n.5 ("Even if not alerted by the defendant, the state court might be alerted by the briefs filed by the state in opposition.").[2]

In an attempt to circumvent this more than ample authority supporting Jones's contention that citation to *Brown* fairly presented his double jeopardy claim, the Commonwealth offers a technical argument. Virginia contends that Jones's failure to include *Brown* or double jeopardy language specifically in his assignments of error on direct appeal—despite his clear focus on *Brown* in the argument sections of his appellate briefs -– precludes us from holding that he fairly presented that claim. The Commonwealth directs our attention to the Rules of the Supreme Court of Virginia, which provide that "[o]nly errors assigned in the petition for appeal will be noticed by this Court." Va. Sup. Ct. R. 5:17(c). However, the Commonwealth cites *no* authority for the proposition that a petitioner *exhausts* for federal habeas purposes only "assigned" errors. In fact, as the district court noted, although we of course defer to appropriate state procedural rules in determining if a petitioner has exhausted a claim, we have previously disregarded a Virginia defendant's failure to identify a claim in his assignments of error, finding the claim fairly presented by the argument section of his brief. *Compare Kasi v. Angelone*, 300 F.3d 487, 508-09 (4th Cir. 2002) *with* Pet'r

---

[2]This case is, therefore, a far cry from instances in which the Supreme Court or this court has found that the petitioner failed to fairly present his federal claim to the state courts. *Compare Reese*, 541 U.S. at 33 ("The petition provides no citation of any case that might have alerted the court to the alleged federal nature of the claim."); *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam) (finding failure to exhaust where petitioner presented only state-law claims); *Anderson v. Harless*, 459 U.S. 4, 7 (1982) (per curiam) (finding failure to exhaust where petitioner cited only to a state case that adjudicated only state law); *Baker*, 220 F.3d at 289 (finding failure to exhaust where petitioner asserted in state court that an erroneous jury instruction had "no basis in Maryland law," and did not refer to federal law at all, even through state case citations); *Mallory*, 27 F.3d at 995 (finding no exhaustion where petitioner "never specified as grounds for relief" his ineffective assistance claim).

Br. in *Kasi v. Commonwealth*, 508 S.E.2d 57 (Va. 1998), *available at* 1998 WL 34375490, at *vii, *xi, *44 (stating in assignment of error only that trial court erred in conducting voir dire, with no reference to federal law).

Moreover, even assuming that a petitioner only exhausts "assigned" errors, Jones's assignment of a sufficiency of evidence error fairly presented his double jeopardy claim. This is so because the Supreme Court of Virginia has regularly treated sufficiency of the evidence and double jeopardy interchangeably in this context. *See Powell*, 552 S.E.2d at 360-61 (analyzing *Brown* claim under the heading, "Sufficiency of the Evidence"); *Jerman*, 593 S.E.2d at 259-60 (finding that "the evidence was sufficient" for an abduction conviction because the abduction evidence was separate from the evidence supporting defendant's assault conviction). When a state's highest court has previously considered two iterations of a federal constitutional claim interchangeably, a habeas petitioner's invocation of either fairly presents that claim. We decline to punish Jones for following the state Supreme Court's lead.

This is one of those "instances in which the ultimate question for disposition, will be the same despite variations in the legal theory or factual allegations urged in its support." *Picard v. Connor*, 404 U.S. 270, 277 (1971) (citation and internal quotation marks omitted). Even the Commonwealth inadvertently concedes as much. *See* Resp. Br. 7 ("[I]f the evidence was sufficient to support both the abduction charge and the robbery charge, then there was not a single offense and his convictions do not violate the Double Jeopardy Clause.").

For these reasons, we must reject the Commonwealth's contention that Jones failed to exhaust his double jeopardy claim. As the district court held, he has done so and thus complied with 28 U.S.C. § 2254(b)(1)(A).

IV.

Even if Jones properly exhausted his double jeopardy claim, the Commonwealth argues that he procedurally defaulted the claim, thereby foreclosing federal habeas review. The Commonwealth points to the Supreme Court of Virginia's state habeas opinion, in which that court, invoking *Slayton v. Parrigan*, concluded that Jones had not raised his double jeopardy claim on direct appeal. *Slayton* holds that a state prisoner may not obtain state habeas relief by raising a non-jurisdictional claim of error in state habeas proceedings that he could have but did not raise at trial and on direct appeal. 205 S.E.2d at 682 ("A petition for a writ of habeas corpus may not be employed as a substitute for an appeal or a writ of error."). Jones contends that *Slayton*, as applied in this context, is not adequate to bar federal habeas review because Virginia courts do not apply *Slayton* "'consistently to cases that are procedurally analogous'" to Jones's case. Pet'r Reply Br. 10 (quoting *Brown v. Lee*, 319 F.3d 162, 169 (4th Cir. 2003)).[3]

"If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619 (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "A state rule is 'adequate' if it is firmly established and regu-

---

[3]We recognize that the conclusion of the Supreme Court of Virginia on state habeas that Jones did not raise a *Brown* claim on direct appeal lies in some tension with our holding above that Jones did fairly present that claim, for federal habeas purposes, to the state courts. Even so, we must defer to the state court's *application* of *Slayton* to bar Jones's claim on state habeas. We do, however, retain the obligation to assess the *adequacy* of the *Slayton* rule for federal habeas purposes. *See Brown v. Lee*, 319 F.3d at 169 ("The assessment of whether a particular state procedure is 'independent and adequate,' so as to bar consideration of the merits of a federal constitutional claim, is a question of federal, not state, law.").

larly or consistently applied by the state court . . . ." *Brown v. Lee*, 319 F.3d at 169 (citing *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)). In making this adequacy determination, we ask "whether the particular procedural bar is applied consistently to cases that are *procedurally* analogous—here, cases in which the particular claim raised could have been raised previously but was not." *McCarver v. Lee*, 221 F.3d 583, 589 (4th Cir. 2000).

Because procedural default constitutes an affirmative defense in habeas cases, the burden rests with a state to prove the adequacy of the relied-on procedural bar. *See Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999) ("[T]he issue of procedural default generally is an affirmative defense that the state must plead in order to press the defense thereafter."); *see also Scott v. Schriro*, 567 F.3d 573, 580 (9th Cir. 2009) (placing the burden on the state to show adequacy); *Pike v. Guarino*, 492 F.3d 61, 73 (1st Cir. 2007) ("The habeas respondent (here, the Commonwealth) bears the burden 'not only of asserting that a default occurred, but also of persuading the court that the factual and legal prerequisites of a default . . . are present.'" (alteration in original) (quoting 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 26.2a, at 1265 n.5 (5th ed. 2005))).

We have held on several occasions that the *Slayton* rule generally provides an adequate bar to federal habeas review. *See, e.g.*, *Wright v. Angelone*, 151 F.3d 151, 159-60 (4th Cir. 1998).[4] However, "the fact that a state procedural rule is adequate in general does not answer the question of whether the rule is adequate as applied in a particular case." *Reid v. True*, 349 F.3d 788, 805 (4th Cir. 2003). Here, the Commonwealth does not cite any case in which Virginia courts have applied

---

[4]Jones does not assert that *Slayton* is "discretionary" and thus inadequate as a matter of law to bar federal habeas review; the Supreme Court recently rejected this contention. *See Beard v. Kindler*, __ S. Ct. __, __, 2009 WL 4573277, at *5 (2009).

*Slayton* to bar a double jeopardy claim on collateral review because the Double Jeopardy Clause was not specifically mentioned as a ground for reversal on direct appeal.

In fact, as the district court correctly observed, the Supreme Court of Virginia "has indulged a more lenient pleading standard where the alleged error pertains to the incidental detention doctrine." In at least two cases, the state Supreme Court on direct appeal—despite the defendant's failure to explicitly mention double jeopardy, federal law, or even *Brown* in his assignments of error—ruled on the merits of the defendant's *Brown* claim. *See Powell*, 552 S.E.2d at 360-61 (addressing claim on the merits when assignment of error stated only that "[t]he trial court erred in denying defendant's motion to strike the Commonwealth's evidence of guilt"); *Cardwell v. Commonwealth*, 450 S.E.2d 146, 152-53 (Va. 1994) (addressing claim on the merits when assignment of error stated only that "[t]he trial court erred in not striking the Commonwealth's evidence of capital murder committed during the course of an abduction, the abduction itself and the firearm charge related thereto").

These cases provide strong evidence that Virginia courts do not "regularly or consistently" require defendants, in order to receive on-the-merits review of *Brown* claims, to refer to the Constitution of the United States or other federal law. In the absence of any showing of consistency by the Commonwealth, these cases demonstrate *Slayton*'s inadequacy in this context. Because the Commonwealth has not met its burden, we cannot find Jones's double jeopardy claim procedurally defaulted.

## V.

The Commonwealth next argues that Jones cannot obtain habeas relief on his double jeopardy claim under either AEDPA or the common-law principles that predate that statute.

AEDPA provides as follows:

> An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d).[5] Therefore, if Virginia adjudicated Jones's double jeopardy claim, we cannot grant habeas relief unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" Supreme Court precedent. *Id.*

Jones conceded in his brief and again at oral argument (and the Commonwealth agrees) that the Virginia trial court adjudicated his double jeopardy claim on the merits. Some of our sister circuits have found trial-court adjudication sufficient to trigger the deferential review set forth in AEDPA. *See, e.g.*, *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009) ("[A]n 'adjudication on the merits' can occur at any level of state court."); *Salazar v. Dretke*, 419 F.3d 384, 397-98 (5th Cir. 2005). We need not reach that question because in this case the Virginia appellate courts also adjudicated Jones's constitutional claim on the merits. The Court of Appeals held that the evidence was sufficient to convict Jones of abduction because Jones "directed Williams"—through Jones's "words and actions combined with his threatening use of the firearm"—to "go to the back of the restaurant and retrieve the money

---

[5]The Commonwealth did not *explicitly* raise AEDPA before the district court, but it did clearly raise the AEDPA standard before the district court by asserting that to prevail Jones must show that the state court's determination was "not merely . . . wrong, but . . . unreasonably wrong."

from the register located there." Because the appellate court concluded that Jones did not just rob Williams but also controlled Williams's movement with force and intimidation, the court resolved the double jeopardy contention. The Supreme Court of Virginia summarily affirmed that holding. *See Weeks v. Angelone*, 176 F.3d 249, 259 (4th Cir. 1999), *aff'd*, 528 U.S. 225 (2000) (holding that a summary disposition of a defendant's claim on direct appeal constitutes an adjudication on the merits).

Applying AEDPA, we must deny Jones's petition because the state courts' adjudication of his double jeopardy claim was not "contrary to," or an "unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Because the Court of Appeals of Virginia determined that Jones instructed Williams and constricted his freedom of movement with force and intimidation, the appellate court did not unreasonably determine that Jones's abduction of Williams was a distinct offense under Virginia law warranting separate punishment. *Garrett*, 471 U.S. at 778; *Hunter*, 459 U.S. at 366.[6]

## VI.

The judgment of the district court is

*AFFIRMED*.

---

[6]Jones may well be correct that the state trial court's "two robberies" theory constituted an erroneous application of Virginia's incidental detention doctrine. *See Jordan v. Commonwealth*, 347 S.E.2d 152, 156 (Va. Ct. App. 1986). While we lament the fact that Virginia appellate courts have not addressed the state trial court's possible error, AEDPA prohibits us from remedying errors of law that do not contravene a Supreme Court holding. 28 U.S.C. § 2254(d)(1).