**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-7372**

XAVIER JAMMAL PINCKNEY,

                Petitioner - Appellee,

        v.

HAROLD W. CLARKE, Director of the Virginia Department of Corrections,

                Respondent – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Arenda L. Wright Allen, District Judge.  (2:15−cv−00276−AWA−RJK)

Argued:  May 10, 2017                              Decided:  June 22, 2017

Before MOTZ, AGEE, and DIAZ, Circuit Judges.

Affirmed in part, vacated in part, and remanded with instructions by unpublished opinion. Judge Diaz wrote the opinion, in which Judge Motz and Judge Agee joined.

**ARGUED:** Matthew P. Dullaghan, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellant.  Leslie Joy Suson, THOMPSON HINE LLP, Atlanta, Georgia, for Appellee.  **ON BRIEF:** Mark R. Herring, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellant.  Eric N. Heyer, Washington, D.C., J. A. Schneider, THOMPSON HINE LLP, Atlanta, Georgia; Jennifer T. Stanton, J.T. STANTON, P.C., Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

The Director of the Virginia Department of Corrections appeals the district court's grant of Xavier Pinckney's petition under 28 U.S.C. § 2254 for a writ of habeas corpus. The district court granted the writ because it found that the state trial court's application of the governing legal principles in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), constituted an unreasonable application of clearly established federal law as determined in *Miller* and then clarified by *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). In particular, the district court held that the state trial court failed to sufficiently consider Pinckney's status as a juvenile and its attendant characteristics before sentencing him to life imprisonment without parole for murdering two people when he was 17. Because the district court granted relief on an unexhausted claim but otherwise correctly rejected the claim properly before it, we vacate the portion of the district court's judgment granting relief, affirm the portion denying relief, and remand with instructions to dismiss Pinckney's petition.

I.

A.

On December 19, 2008, Connor Smith came home to find his older brother James Smith dead on the sofa. Police officers subsequently found Jean Smith, Connor and James's mother, dead in the master bedroom. James and Jean each had gunshot wounds to the head, James's coming at close range. The investigation led to Pinckney, who confessed to breaking into the home, shooting the Smiths, and stealing several items.

3

Following a bench trial, a judge of the Circuit Court of Prince William County, Virginia, found Pinckney guilty of two counts of capital murder in violation of Virginia Code sections 18.2-31(4) and 18.2-31(7), one count of robbery in violation of section 18.2-58, and three counts of use of a firearm in the commission of those felonies in violation of section 18.2-53.1. The trial court would later reconsider this ruling and find Pinckney guilty of two more counts of capital murder in violation of sections 18.2-31(4) and 18.2-31(8). The court ordered that a presentence report be prepared and set a date for sentencing.

Pinckney moved to continue his sentencing in order to gather and present mitigation evidence prepared by Dr. Mills, a mental health expert who had evaluated him. Pinckney argued under section 16.1-272 that the court had discretion to impose a sentence less than life imprisonment and that the mitigation evidence would assist in that determination. The Commonwealth opposed any continuance, contending that the court was required to impose a sentence of life imprisonment without parole for the capital murder convictions. The trial court granted the continuance without explicitly deciding whether it had discretion to deviate from a sentence of life imprisonment without parole. Characterizing the evaluation as "medical evidence," the court said that "in fairness to [Pinckney] and in fairness to the process, [Pinckney] should have the opportunity to present whatever evidence he thinks is necessary." J.A. 326–27.

At Pinckney's sentencing hearing, the trial court noted that it had received and reviewed the presentence report and Dr. Mills's psychological report. After hearing victim impact testimony from Connor Smith and his father Richard Smith and hearing

4

from Pinckney, the court explained its sentencing decision with respect to the capital murder convictions:

> There's nothing I can do to make it right. There's nothing I can do that is the right thing to do in this case. This is a tragic case. It's not an overstatement, I don't think, to call it a tragic case.
>
> It's not a mishap, Mr. Pinckney, it's murder. You killed two people. And while I read all of the victim impact statements and considered them and considered the testimony here, I think nothing is really as compelling as the victim impact statement, reiterated to some extent by the testimony of Mr. Rick Smith, who talked about the real life effect of the loss of these people on the immediate family.
>
> The things we don't think about, things like having to move out of the neighborhood, a ten year old making new friends, a child graduating from college without her mother there.
>
> And I looked at the presentence report and I tried to find some reason for this and you know there isn't one because I look at your upbringing, I look at the way you were raised, and I think your mother did everything she could. You have siblings who have never been in trouble. You have a father who, while he wasn't there all the time, certainly was there part of the time and wasn't a malignant influence on you.
>
> You had had some experience in the juvenile court system. You had had, I don't know if you would call it the benefit of probation, but you had certainly experienced probation, some mentors.
>
> And you killed these people to avoid a juvenile conviction for burglary, which might have meant 30 days in detention and maybe a suspended commitment. It is just almost incomprehensible and, as I mentioned, tragic.
>
> And I considered the presentence report and I considered the psychological evaluation and one of the reasons that I think this case is so awful is because anytime a life is taken it's terrible. These were two extraordinary people you killed and when you killed them, you took their lives and you took your own future.
>
> And I think the appropriate sentence in this case on the capital murder charges is to sentence you to life without parole.

J.A. 356–58.

In addition to the sentence of life imprisonment without parole, the trial court sentenced Pinckney to an additional 18 years of imprisonment for the remaining felonies.

5

The Court of Appeals of Virginia affirmed the trial court's ruling and the Supreme Court of Virginia refused Pinckney's petition for appeal. The Supreme Court decided *Miller* four days later, and then in September 2012, the Supreme Court of Virginia denied Pinckney's petition for rehearing. Pinckney then turned to state habeas corpus remedies.

B.

Pinckney filed a petition for a writ of habeas corpus in the Circuit Court of Prince William County, Virginia. Contrary to his position at sentencing, Pinckney argued that the trial court "was required under Virginia state law to sentence him to life in prison without the possibility of parole." J.A. 428. As such, the trial court could not "consider any mitigating factors." J.A. 428. Pinckney's sole claim was that *Miller* rendered his sentence of mandatory life imprisonment without parole unconstitutional and that he was "entitled to a new sentencing hearing" which complied with *Miller.* J.A. 444. Pinckney did not argue in the alternative that if the trial court did have discretion to impose a sentence less than life imprisonment without parole, its consideration of the evidence was still insufficient to satisfy *Miller*'s requirements. Instead, Pinckney devoted most of his petition to arguing that *Miller*, decided over two years after his sentencing hearing, had retroactive effect.

In his motion to dismiss, the Warden of the Red Onion State Prison argued that the trial court had discretion to impose a sentence less than life imprisonment without parole. Moreover, the Warden concluded that the trial court complied with *Miller* by "impos[ing] a sentence which took account of Pinckney's age, the circumstances of the crime, his criminal history, and his mitigating evidence." J.A. 456. In his response, Pinckney

6

continued to argue that the trial court was required to impose a sentence of life imprisonment without parole and again failed to make any specific argument regarding whether the trial court's conduct nevertheless complied with *Miller*.

The state habeas court—with the trial-court judge presiding—dismissed Pinckney's petition. The court recognized that *Miller* "announced a new rule of law governing sentencing of juveniles convicted of capital murder," but found that it did not present any retroactivity issues as defined in *Teague v. Lane*, 489 U.S. 288 (1989), because the Supreme Court decided *Miller* before Pinckney's conviction became final for purposes of *Teague*'s retroactivity analysis. J.A. 480. The court then surveyed *Miller*, understanding it to require that a sentencing court "'follow a certain process— considering an offender's youth and attendant characteristics—before imposing a particular penalty,' life without parole," and that a sentencing court "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." J.A. 480 (quoting *Miller*, 132 S. Ct. at 2469, 2471).

Turning to Virginia law, the court concluded that "[a] juvenile defendant in Virginia is not subject to a sentence of 'mandatory life without parole' as was the case in *Miller*." J.A. 482. The court based that conclusion on two grounds. First, it found it "clear that when [the Virginia] legislature intends to bar a court from suspending execution of a sentence, it fixes a 'mandatory minimum' sentence in the statute." J.A. 481. Because the sentence for capital murder "is 'death' or 'imprisonment for life,' or, if the defendant was a juvenile at the time of the offense, 'imprisonment for life,'" rather

7

than a sentence that includes the words "mandatory minimum," nothing precluded the court from exercising its discretion to "suspen[d] . . . all or part of the life sentences." J.A. 481 (quoting Va. Code Ann. § 18.2-10(a)). Second, it found that Virginia law provided "a circuit court sentencing a juvenile indicted as an adult" with "wide discretion to impose a range of sentencing alternatives." J.A. 481 (citing Va. Code Ann. § 16.1-272 (specifying sentencing options when a juvenile indicted as an adult is found guilty, including that "the court shall fix the sentence without the intervention of a jury"); Va. Code Ann. § 19.2-303 (authorizing a sentencing court to "suspend imposition of sentence or suspend the sentence in whole or part" after conviction)). Accordingly, the habeas court found that the trial court "had the statutory authority to suspend all or part of Pinckney's life sentence in light of mitigating evidence, including the defendant's age." J.A. 482.

Finally, the habeas judge examined her own conduct as the trial judge, noting that she had "concluded, consistent with Pinckney's argument [before the trial court] that [she] had the authority 'to fix a sentence short of life in prison.'" J.A. 482. As the trial judge, she "review[ed] the presentence report and [took] account of all the mitigating evidence Pinckney had marshaled." J.A. 482. Then she "did exactly what *Miller* requires: [she] imposed a sentence which took account of Pinckney's age, the circumstances of the crime, his criminal history, and his mitigating evidence." J.A. 482. "Having taken all those mitigating factors into account, [she] simply declined to exercise [her] discretion to commute or suspend the sentence in light of all the evidence in Pinckney's case." J.A. 482–83.

8

Pinckney petitioned the Supreme Court of Virginia for appeal. As before, his petition focused on the trial court's purported lack of discretion to impose a sentence other than life imprisonment without parole and made no alternative argument as to the trial court's compliance with *Miller* or the sufficiency of its consideration of mitigating evidence. After Pinckney submitted his petition, the Supreme Court of Virginia held that section 19.2-303 granted trial courts the authority to "suspend part or all of the life sentence imposed for a Class 1 felony conviction," meaning that capital murder "does not impose a mandatory minimum sentence" as described in *Miller*. *Jones v. Commonwealth*, 763 S.E.2d 823, 824, 826 (Va. 2014) (analyzing Virginia law as it stood in 2000), *vacated on other grounds*, 136 S. Ct. 1358 (2016) (remanding for further consideration in light of *Montgomery*), *and aff'd*, 795 S.E.2d 705, 711 (Va. 2017) (reaffirming previous holding that section 19.2-303 provides discretion to suspend part or all of a life sentence imposed for a Class 1 felony conviction). In March 2015, the Supreme Court of Virginia refused Pinckney's petition for appeal. After exhausting his state remedies, Pinckney turned to the federal habeas corpus process.

## C.

In his memorandum in support of his § 2254 petition, Pinckney made the same lone argument that he made before all the state courts—that the trial court had no discretion to impose a sentence less than life imprisonment without parole and thus necessarily "did not exercise any discretion to consider mitigating factors . . . because, from the [trial court's] view, it had no such discretion to exercise." J.A. 564. The magistrate judge recommended that Pinckney's petition be denied. In particular, the

magistrate judge found that "the decision of the [state] habeas court about the extent of a Virginia court's authority under Virginia law when sentencing a juvenile convicted of capital murder constitutes a state court decision on a question of state law outside the province of a federal habeas court." J.A. 623. Furthermore, notwithstanding Pinckney's failure to "argu[e] about whether the factual record supports [the state habeas court's] conclusion" that the trial court complied with *Miller*'s requirement to take into account his youth and attendant characteristics, the magistrate judge reviewed the trial court's conduct and concluded that the state habeas court "did not unreasonably apply this aspect of *Miller*'s holding or base its decision upon an unreasonable determination of the facts." J.A. 629.

Pinckney objected to three of the magistrate judge's conclusions: (1) a federal court must defer to a state habeas court's conclusions and findings instead of conducting de novo review; (2) the state habeas court correctly "concluded that the Virginia sentencing statutes allowed the trial court discretion to impose a sentence less than life without parole"; and (3) the state habeas court "reasonably determined that the trial court understood, at the time of sentencing, that it possessed" discretion in sentencing Pinckney. J.A. 633–34. Pinckney did not object to the magistrate judge's conclusion about the trial court's compliance with *Miller*'s requirement to take into account his youth and its attendant characteristics.

The Supreme Court decided *Montgomery* on the same day that Pinckney filed his objections. Afterwards, noting that *Montgomery* "expanded the holding of *Miller*," the district court ordered the parties to submit supplemental briefing on *Montgomery*'s

10

"possible applicability" and "[t]he sufficiency of the trial court's consideration of Mr. Pinckney's youth at sentencing, viewed in light of the Supreme Court's decisions in" *Miller* and *Montgomery*. J.A. 659. In his supplemental brief, Pinckney argued for the first time that the trial court's consideration of mitigation evidence was insufficient.

The district court adopted in part and overruled in part the magistrate judge's report and recommendation and granted Pinckney's petition. In particular, the court overruled Pinckney's first and third objections. It sustained, however, Pinckney's second objection by holding that "[i]n light of *Montgomery*'s clarification of the process required by *Miller* before a juvenile homicide offender can be sentenced to life imprisonment without parole, . . . the trial court in this case clearly failed to make the constitutionally required individualized determination." J.A. 712. The district court outlined the trial court's purported error as follows:

> First, the trial court gave no indication that it was guided by the fundamental principle "require[d] before sentencing a juvenile to life without parole," specifically, "'how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'" *Montgomery*, 136 S. Ct. at 733 (quoting *Miller*, 132 S. Ct. at 2469). Second, the trial court failed to consider whether Mr. Pinckney's crime reflected "'irreparable corruption'" (thereby permitting application of a life sentence), as opposed to "'unfortunate yet transient immaturity.'" *Id.* at 734 (quoting *Miller*, 132 S. Ct. at 2469).

J.A. 714 (alteration in original).

The district court "remanded for resentencing in accordance with the principles and standards enunciated in *Miller*." J.A. 719. The Director secured a temporary stay of the district court's order, and this appeal followed.

11

II.

We address in turn whether the district court chose a proper ground upon which to base its grant of relief and whether any other part of Pinckney's petition has merit. Our review of the district court's decision is de novo. *Bennett v. Stirling*, 842 F.3d 319, 322 (4th Cir. 2016). The way in which a federal habeas court must review the decision of a state court is as follows:

> Under Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a state prisoner's habeas petition unless the state court's adjudication of the prisoner's claim was legally or factually unreasonable. *See* 28 U.S.C. § 2254(d); Pub. L. No. 104–132, § 104, 110 Stat. 1214, 1218–19 (codified at 28 U.S.C. § 2254). More precisely, Section 2254(d)(1) allows relief if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." § 2254(d)(1). . . . Section 2254(d)(2), in turn, permits relief where the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). A state court's factual determinations are presumed correct, and the petitioner must rebut this presumption by clear and convincing evidence. § 2254(e)(1).

*Bennett*, 842 F.3d at 322.

In examining the state habeas proceedings, we, as the district court did, "look through" the Supreme Court of Virginia's summary refusal of Pinckney's petition for appeal and evaluate the circuit court's habeas order, which is the last "reasoned decision" from a state court. *Brumfield v. Cain*, 135 S. Ct. 2269, 2276 (2015).

A.

The Director says that Pinckney never presented to any Virginia court a claim about the sufficiency of the trial court's consideration of his age-related characteristics, a

12

failure which should have precluded the district court from granting relief on such a claim. We agree.

"A habeas petitioner is generally barred from obtaining federal habeas review of a claim if he failed to exhaust the claim in state court." *Morva v. Zook*, 821 F.3d 517, 532 (4th Cir. 2016) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). "To satisfy his burden, the petitioner must show that both the operative facts and the controlling legal principles were presented to the state court." *Gordon v. Braxton*, 780 F.3d 196, 201 (4th Cir. 2015) (internal quotation marks and alteration omitted). For example, "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

Pinckney says that he presented a claim about the sufficiency of the trial court's consideration of his age-related characteristics to the state habeas court when he wrote in his brief to that court that "*Miller* requires that a judge must consider mitigating qualities of youth." Appellee's Br. at 13 (quoting J.A. 444). But placed in context, that clause is the start of a sentence which continues: "and because the trial court had no such discretion to consider such factors in sentencing Petitioner to life without parole in this case, Mr. Pinckney is entitled to a new sentencing hearing and other such relief as would be consistent with the *Miller* rule." J.A. 444. And that sentence is the concluding sentence in the argument section of Pinckney's brief, which is otherwise devoted entirely to explaining *Miller* and arguing that *Miller* had retroactive effect. Pinckney made no argument in his brief as to whether, if the trial court did have discretion to impose a

13

sentence less than life imprisonment without parole, its consideration of the evidence was still insufficient to satisfy *Miller*'s requirements.

Pinckney also contends that his fair presentment of a sufficiency claim is reflected in a sentence from the Warden's motion to dismiss which reads: "[The trial court] imposed a sentence which took account of Pinckney's age, the circumstances of the crime, his criminal history, and his mitigating evidence." Appellee's Br. at 13 (quoting J.A. 456). But once again, context is key. That statement comes in the last paragraph of the Warden's argument section, which is otherwise devoted exclusively to retroactivity and whether the trial court had discretion to impose a sentence other than life imprisonment without parole.

Finally, Pinckney points to the state habeas court's pronouncement that the trial court "did exactly what *Miller* requires: it imposed a sentence which took account of Pinckney's age, the circumstances of the crime, his criminal history, and his mitigating evidence." Appellee's Br. at 14 (quoting J.A. 482). But that statement came in the context of explaining that the trial court had discretion to impose a sentence less than life imprisonment without parole. It's telling that even after the state habeas court made that remark, Pinckney failed in his petition to the Supreme Court of Virginia to make an argument about the sufficiency of the trial court's consideration of his youth and attendant characteristics.

Putting all of this together, Pinckney exhausted his sufficiency claim only if: (1) his citations to *Miller* and requests for a sentencing hearing consistent with *Miller*, and (2) the Warden's and the state habeas court's passing references to the sufficiency of the

14

trial court's consideration of the evidence are enough for us to conclude that Pinckney presented the operative facts and the controlling legal principles for the claim. In making this determination we must keep in mind that *Miller* has two holdings: (1) "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," and (2) a sentencing court must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller*, 132 S. Ct. at 2469. Pinckney never presented an argument as to the latter holding, and we reject his contention that he demonstrated exhaustion by citing to a case that supports multiple claims and using conclusory, sweeping language to describe the relief requested under that case.

Although Pinckney does not cite the case, in *Jones v. Sussex I State Prison*, we held that a pro se petitioner had fairly presented his double jeopardy claim to Virginia state courts on direct appeal by citing to a Virginia case that dealt exclusively with federal double jeopardy law. 591 F.3d 707, 713 (4th Cir. 2010). Other factors that weighed in favor of finding exhaustion of the claim included petitioner's presentation of a fact pattern that Virginia courts had "regularly considered appropriate for double jeopardy analysis," petitioner's "clear focus" on double jeopardy in the argument sections of his briefs, and the state's recognition of and opposition to the claim in its state-court brief. *Id.* at 713–14. Finally, responding to the state's "technical argument" that the petitioner failed to include "double jeopardy language specifically in his assignments of error on direct appeal," we reasoned that "even assuming that a petitioner only exhausts 'assigned' errors, [petitioner's] assignment of a sufficiency of evidence error fairly

15

presented his double jeopardy claim" because Virginia "has regularly treated sufficiency of the evidence and double jeopardy interchangeably in this context." *Id.* at 714–15.

*Jones* informs our analysis, but it's too different to control it. As in *Jones*, Pinckney cited to the right case (*Miller*), but that's where the similarities end. Pinckney offered no sufficiency argument whatsoever in his briefs (and thus no fact pattern), the Warden neither recognized nor opposed a sufficiency claim, and there's no evidence that the Virginia state courts conflate or treat interchangeably *Miller*'s two holdings. More on point are cases where a petitioner initially proceeded on one theory and then attempted to switch, even subtly, to a substantively different but related theory. Those cases are in contrast to *Jones*, where the petitioner consistently advanced what was in substance a double jeopardy claim.

In *Smith v. Quarterman*, for example, the petitioner argued in his state habeas petition "that trial counsel denied him effective assistance of counsel during the punishment phase because they failed to adequately investigate his history, when such historical information was essential in the preparation of a biopsychosocial assessment by an expert in the area of mitigation." 515 F.3d 392, 400 (5th Cir. 2008) (alteration omitted). "The state habeas court specifically ruled on trial counsel's decision not to conduct a professional psychiatric evaluation and to elicit testimony from a mitigation expert." *Id.* at 401. Then, in his federal habeas petition, the petitioner argued "that trial counsel should have investigated a possible temporary insanity defense, sought prison records suggesting a nonviolent disposition during incarceration, and interviewed [his] relatives with the intent that they testify in the punishment phase." *Id.* The Fifth Circuit

16

said that "[t]he two petitions assert[ed] similar arguments only to the extent that both raise[d] an issue of ineffective assistance of counsel." *Id.* Thus, the petitioner failed to exhaust the claim in his federal petition because he "changed the focus of his federal claim to substantive areas not previously raised in state court." *Id.* at 402.

And in *Wooten v. Kirkland*, the Ninth Circuit noted that it "has concluded that a petitioner has 'fairly presented' a claim not named in a petition if it is 'sufficiently related' to an exhausted claim." 540 F.3d 1019, 1025 (9th Cir. 2008). In that circuit, "[c]laims are 'sufficiently related' or 'intertwined' for exhaustion purposes when, by raising one claim, the petition clearly implies another error," but the "exception does not apply when language in a petition for review indicates a petitioner's 'strategic choice' not to present an issue for review." *Id.* Applying these principles, the court held that the petitioner's cumulative error claim was not exhausted because though the petitioner "recited three out of the four alleged substantive errors in his brief to the California Supreme Court," he "specified that he included those errors in order to exhaust them for the purpose of bringing a federal habeas petition." *Id.* at 1026. That he did so while "omitt[ing] the cumulative error claim confirms that the California Supreme Court had no reason to conclude that [petitioner] also believed that there was cumulative error," and "suggest[ed] a strategic choice not to present" that claim. *Id.* at 1025–26.

This case is closer to *Smith* and *Wooten* than *Jones*. Whether the trial court had discretion at sentencing and whether it sufficiently considered Pinckney's youth and attendant characteristics are "similar arguments only to the extent that both" implicate *Miller*. *See Smith*, 515 F.3d at 401. That Pinckney repeatedly declined opportunities to

17

raise the sufficiency claim while consistently raising the claim about discretion "suggests a strategic choice not to present" the sufficiency claim. *Wooten*, 540 F.3d at 1025. Putting the isolated statements that Pinckney points to back in context, it becomes clear that he "changed the focus of his federal claim to substantive areas not previously raised in state court." *Smith*, 515 F.3d at 402; *see also Wagner v. Smith*, 581 F.3d 410, 416 (6th Cir. 2009) (refusing to read language from a brief "in a vacuum" in order to determine whether petitioner exhausted claims, and instead insisting on placing it in proper context).

In sum, Pinckney failed to place a Virginia court on notice of a *Miller* claim regarding the sufficiency of the trial court's consideration of his youth and its attendant characteristics. As such, he failed to exhaust that claim in state court and the district court erred by basing its grant of relief upon it.[*]

B.

Having established that the district court erred by granting habeas relief on an unexhausted claim, the next question is whether any other part of Pinckney's petition has merit. The answer is no.

Pinckney's objection to the magistrate judge's conclusion that a federal court must defer to a state habeas court's conclusions and findings instead of conducting de novo review is baseless, and the district court correctly rejected it. Deference, as opposed to de

---

[*] Because we resolve this issue on exhaustion grounds, we do not reach the Director's alternative argument that the district court erred by measuring the trial court's conduct against a Supreme Court case (*Montgomery*) which postdates the culmination of Pinckney's state habeas process.

novo review, is precisely what § 2254(d) requires. *See Bennett*, 842 F.3d at 322. Relatedly, Pinckney says that the fact that the same judge presided over his trial and state habeas proceedings somehow rendered the state habeas proceedings defective. Once again, there is no merit to that argument. *See Schriro v. Landrigan*, 550 U.S. 465, 476 (2007) (noting that postconviction judge, who was also the sentencing judge, was "ideally situated" to make findings concerning sentencing).

That leaves Pinckney with his *Miller* claim that the trial court had no discretion to impose a sentence less than life imprisonment without parole. That's the one claim that Pinckney exhausted, and the district court correctly rejected it.

"[F]ederal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (internal quotation marks omitted). Whether a state sentencing statute is mandatory or instead allows for judicial discretion in setting the punishment is a question of state law. *Miller*, 132 S. Ct. at 2462 n.2. Thus, the validity of the state habeas court's finding that the trial court had discretion at sentencing is beside the point. A federal habeas court cannot hear Pinckney's claim because it's a claim about an error of state law.

III.

For the reasons given, we vacate the portion of the district court's judgment granting relief, affirm the portion denying relief, and remand with instructions to dismiss Pinckney's petition.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED WITH INSTRUCTIONS*

19