COURT OF APPEALS OF VIRGINIA

Present: Judges Fulton, Causey and Lorish

GEORGE VALENTINE LOEHR

                                         MEMORANDUM OPINION[*]

v.     Record No. 0476-24-2                     PER CURIAM
                                              APRIL 1, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Daniel T. Balfour, Judge Designate[1]

(Taylor B. Stone; Janus & Stone P.C., on brief), for appellant.

(Jason S. Miyares, Attorney General; Aaron J. Campbell, Assistant
Attorney General, on brief), for appellee.


The Circuit Court of the City of Petersburg convicted George Valentine Loehr of

malicious wounding. On appeal, Loehr contends that the trial court erred by denying his

continuance motion and also by finding the evidence sufficient to support his conviction. After

examining the briefs and record in this case, the panel unanimously holds that oral argument is

unnecessary because "the dispositive issue or issues have been authoritatively decided, and the

appellant has not argued that the case law should be overturned, extended, modified, or

reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b). We affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The Honorable Dennis M. Martin, Sr., presided over the continuance motion of June 21,
2022.

BACKGROUND[2]

A bench trial for this matter was initially scheduled on the trial court's docket for June 21, 2022. During arraignment on June 21—prior to the scheduled trial—Loehr told the trial court that his ex-wife, Tina Wright, was an eyewitness to the altercation but she was not present because she was "wanted and is not trying to be found." The trial court took a recess to allow Loehr's counsel, Todd Ritter, an opportunity to call Wright on the phone. After the recess, Ritter explained that he had spoken with Wright by telephone and that she would appear as a witness even though her appearance might result in her "having to deal with whatever she has to deal with." Ritter acknowledged that there was "still a measure of reluctance" on Wright's part because she wanted "to get her situation straight," but she had told him that she would furnish him with an address to use for a subpoena. Loehr claimed that Wright was material to his defense and asked for a continuance. The Commonwealth objected because the case had been pending for nearly six months and Loehr had access to Wright's phone number long before the trial date. The trial court granted a continuance to give Loehr an opportunity to secure his eyewitness. The parties agreed to a July 7, 2022 trial date.

On July 7, Loehr again sought a continuance, this time for two reasons. First, Loehr told the trial court that he had retained a new attorney, Steve Hanna, who had filed a motion for substitution of counsel but was unavailable for trial because he was out of town for the week. Loehr also sought a continuance because Wright again did not appear to testify. The Commonwealth objected to the continuance, citing how long the matter had been pending on the

---

[2] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

court's docket, the fact that Hanna was Loehr's third attorney, and because Loehr was already granted one continuance to secure his witness for trial. The trial court denied Loehr's motion to continue the case.

During the ensuing trial, the Commonwealth's evidence showed that as Reginald Jones stood in front of a store in Petersburg one evening in January 2022, Loehr, who was sitting in his parked truck, asked where Jones got his Army uniform.[3] Jones responded that a friend from Fort Lee gave it to him. Loehr asked Jones where he worked, and Jones responded, "[w]ell, I don't work like that." Loehr then inquired why Jones was standing out in front of the store. Rather than answering, Jones entered the store. Loehr exited his truck and followed Jones into the store, where he "was all over" Jones so much so that Jones yelled for the store clerk "to call the police." Loehr struck Jones in the back of the head and, as Jones fell to the ground, Loehr beat him "like somebody was crazy." Jones testified that Loehr "started beating [him] and beating [him] and beating [him]" with his bare fists. Jones's resulting injuries were a broken nose, a bleeding ear, and gashes in his head that required stitches. At the time of the trial, Jones was still "mentally messed up," had trouble sleeping, and suffered recurring headaches.

On cross-examination, Jones stated that he had never seen Loehr before that night, that he did not ask Loehr for money, that he did not strike or hit Loehr at any point, and that although he had consumed alcohol earlier, he was not intoxicated. He admitted that he was not in the military. Jones further testified, on cross, that "after [Loehr] did what he did to me, he tried to get in [his] truck and crank the truck, and it would not crank."

Petersburg Police Officer Dabney responded to the store and spoke with both Jones and Loehr. Officer Dabney noticed that Jones appeared to have been beaten and that Loehr's hands

---

[3] Jones wore a set of military fatigues. The Commonwealth entered a photograph from the night of the offense illustrating the uniform Jones was wearing during the assault, as well as the injuries he incurred.

- 3 -

and knuckles were "kind of bloody." Loehr also had bloodshot, glassy eyes and a faint odor of alcohol about his person. Officer Dabney placed Loehr in his patrol vehicle and transported him to police headquarters. While in the cruiser, Loehr "continued to bang his head several times on the partition which caused him to go unconscious," resulting in Officer Dabney's request for paramedics and a trip to the hospital. Officer Dabney confirmed that Loehr has "a unique breathing condition" requiring a tracheotomy and that Loehr cannot talk unless he puts a finger to his throat.

After the Commonwealth rested, Loehr moved to strike the evidence as insufficient to support a conviction for malicious wounding. Loehr argued that the Commonwealth failed to prove "there is a wound that qualifies" under the statute and that the evidence failed to prove Loehr had "the specific intent to maim, disfigure, disable, or kill." The trial court denied the motion.

Loehr testified that he is 5'8", weighs 185 pounds, and is "pretty strong." He wears a "trach" from cancer. Loehr explained that on the night of the offense, Jones approached his truck on the driver's side as soon as Loehr pulled into the parking lot and asked for "change, a dollar bill, or anything." After Loehr told Jones that he did not have any money, Jones returned to the sidewalk in front of the store as Loehr went inside. When Loehr exited the store a few minutes later, Jones again asked if Loehr had any change. Loehr responded, "[m]an, get the fuck out of my face," and walked past him. As he passed by, Jones struck him on the side of his head "in [his] eye," and the two began to fight. Loehr testified that he did not even think about it and "just reacted." He was defending himself. Loehr explained that the fight did not last long before he "just stopped." Having gotten the "better half of [Jones]," it was fair to say he won the fight.

As for banging his head in the police cruiser, Loehr explained that he had been having seizures periodically that day and that he had a seizure while in the back of Officer Dabney's

police car. Because his hands were cuffed, he had to bang his head to get Officer Dabney's attention. Loehr submitted a photograph of an injury to the side of his face that he claimed to have sustained when Jones struck him. He denied that the injury to his face resulted from banging his head on the partition in the police vehicle.

After a renewed motion to strike and closing arguments, the trial court convicted Loehr of malicious wounding. Loehr appeals.

ANALYSIS

I. Loehr's Continuance Motion

"A motion for a continuance . . . is addressed to the sound discretion of the trial court whose decision will not be reversed unless the record affirmatively shows an abuse of such discretion." *Smith v. Commonwealth*, 68 Va. App. 399, 420 (2018) (alteration in original) (quoting *Smith v. Commonwealth*, 16 Va. App. 630, 634 (1993)), *aff'd*, 296 Va. 450 (2018). "An abuse of discretion occurs 'when a relevant factor that should have been given significant weight is not considered' or 'when an irrelevant or improper factor is considered and given significant weight.'" *Diaz v. Commonwealth*, 80 Va. App. 286, 304 (2024) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). The court also abuses its discretion when it commits a clear error of judgment, even if considering "all proper factors, and no improper ones." *Landrum*, 282 Va. at 352 (quoting *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984)). "In evaluating whether a trial court abused its discretion, . . . '[this Court does] not substitute [its] judgment for that of the trial court. Rather, [this Court] consider[s] only whether the record fairly supports the trial court's action.'" *Carter v. Commonwealth*, 293 Va. 537, 543 (2017) (first alteration in original) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

A. Motion to Continue Based on the Right to Retained Counsel

"An accused's right to be represented by counsel is guaranteed by both the Bill of Rights of the Virginia Constitution and the sixth amendment to the United States Constitution." *Bolden v. Commonwealth*, 11 Va. App. 187, 190 (1990) (citations omitted). Generally, an accused with adequate resources has the right to be represented by an attorney of his own choosing. *Johnson v. Commonwealth*, 51 Va. App. 369, 374 (2008). "However, this right is a qualified right which is limited by a 'countervailing state interest . . . in proceeding with prosecutions on an orderly and expeditious basis.'" *Bolden*, 11 Va. App. at 190 (alteration in original) (quoting *Paris v. Commonwealth*, 9 Va. App. 454, 460 (1990)). Thus, "[a] trial judge has broad discretion in determining whether a continuance to obtain counsel is necessary in order to preserve the accused's right to assistance of counsel." *Feigley v. Commonwealth*, 16 Va. App. 717, 721 (1993). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Paris*, 9 Va. App. at 461 (quoting *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)).

The record shows that the general district court appointed Loehr a public defender for a preliminary hearing held on March 18, 2022. Loehr later moved to substitute Ritter to represent him at trial. The trial court signed an order of substitution on April 21, 2022, and a bench trial was scheduled by agreement for June 21, 2022. The Commonwealth then sent a copy of the preliminary hearing transcript to Ritter "to make sure that he would be up to speed." On June 21, 2022, when the parties appeared for trial, Ritter said that he was prepared to go forward and that he was "surprise[d] at this point to ask for the continuance," since it was "[his] understanding that [Wright] is wanted and is not trying to be found." Also, he had no address at which he could serve a subpoena. By then, the single charge of malicious wounding, which occurred on January 22, 2022, had been winding its way through the courts for five full months.

Nine days after the continuance was granted and six calendar days before trial, Hanna filed a substitution motion in the trial court. He did not seek a pretrial ruling on his motion. The trial court first learned of the substitution motion on July 7 when the case was called for trial. Because Hanna was on vacation, Ritter appeared with a proposed order and sought a continuance until Hanna's return. Although Ritter regretted scheduling the July 7 trial date so soon after the June hearing, he expressly stated that he was prepared to go forward should the trial court deny Hanna's substitution motion. The trial court told Ritter that it would entertain a rehearing if Wright testified. As the trial court found, this was a "fistfight" that involved one person's word over another. More importantly, Loehr did not offer the trial court any particular reason that he wanted a different attorney. "In order to justify a continuance 'by the last minute change of counsel, exceptional circumstances must exist.'" *Feigley*, 16 Va. App. at 721 (quoting *Shifflett v. Commonwealth*, 218 Va. 25, 30 (1977)). No such exceptional circumstances appear in the record. Thus, the trial court did not err in refusing to continue the matter just so Loehr's third attorney could be present to try the case.

### B. Motion to Continue Based on the Missing Witness

"By statute, continuances are to be granted if necessary." *Cherricks v. Commonwealth*, 11 Va. App. 96, 99 (1990) (citing Code § 19.2-162).[4] "A defendant's right to call for evidence in his favor guarantees him sufficient time to investigate and evaluate the evidence in preparation for trial." *Carter v. Commonwealth*, 39 Va. App. 735, 744-45 (2003) (quoting *Cardwell v. Commonwealth*, 248 Va. 501, 509 (1994)). "However, the need to investigate and evaluate the evidence and the prejudice allegedly resulting from the denial of a continuance cannot be based upon mere speculation." *Id.* at 745 (quoting *Cardwell*, 248 Va. at 509). "Thus, absent a showing of prejudice to a defendant by the denial of a continuance, an appellate court will not find that a trial

---

[4] "Courts before which criminal proceedings are pending shall afford such continuances and take such other action as is necessary to comply with the provisions of this chapter." Code § 19.2-162.

- 7 -

court abused its discretion." *Id.* (quoting *Cardwell*, 248 Va. at 509). "In determining whether the trial court properly exercised its discretionary powers, we look to the diligence exercised by the moving party to locate the witness and secure his attendance at trial," and we must determine whether the circumstances "'warrant the conclusion that the real purpose in moving for a continuance is to delay or evade trial and not to prepare for it.'" *Cherricks*, 11 Va. App. at 99-100 (quoting *Myers & Axtell, Receivers v. Trice*, 86 Va. 835, 838 (1890)).

Ritter appeared with Loehr for trial on June 21, 2022, and sought a continuance because, while Wright was purportedly a material eyewitness to the altercation, she was hesitant about coming to court. Although Loehr was aware of Wright's existence and that she was material to his case, he apparently did not attempt to contact her before the morning of trial. The trial court took a recess so Loehr could call Wright and ask if she could appear. Thereafter, Ritter expressly stated that although Wright said she would provide him an address for purposes of a subpoena, "there [was] still a measure of reluctance in speaking to her," because she "was not trying to be found" and wanted "to get her situation straight." Over the Commonwealth's objection, the court continued the matter and the parties agreed to a July 7 trial date. Ritter never issued a subpoena (presumably because Wright never provided him with an address), and Wright again did not appear for trial. On the other hand, the Commonwealth's witnesses were present on both trial dates; moreover, on June 21, they apparently waited for three hours before Loehr made his motion to continue.

Wright's repeated reluctance to appear, despite Loehr's assurances that she was a necessary witness, was measured by the trial court and found wanting. According to Jones's testimony, Wright was not even present and did not witness the incident. Furthermore, Loehr had ample opportunity to subpoena Wright for trial but failed to do so. As the trial court suggested, it appears that the request for a continuance was made more because Loehr did not "want to go forward" or "try the case" than because Wright did not appear to testify. Therefore, we cannot conclude that the

- 8 -

trial court abused its discretion or made an error of law by refusing to allow a second continuance to attempt to secure Wright's appearance in court.

## II. Sufficiency of the Evidence

Loehr asserts that the evidence was insufficient to support his conviction because (a) Jones's testimony was not credible, (b) Loehr acted in self-defense, and (c) the Commonwealth failed to prove Loehr had the intent to maim, disfigure, disable, or kill. We disagree with all three contentions.

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Shahan v. Commonwealth*, 76 Va. App. 246, 258 (2022) (quoting *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021)). The question on appeal is "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Rock v. Commonwealth*, 76 Va. App. 419, 434 (2023) (quoting *Nelson v. Commonwealth*, 73 Va. App. 617, 622 (2021)).

### A. Witness Credibility

At trial, determining the credibility of the witnesses "is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). The fact finder, here the trial court, is "free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc). Additionally, "[i]n its role of judging witness credibility, [it] is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). When the trier of fact has resolved credibility issues in favor of the Commonwealth, "those findings will not be disturbed on appeal unless plainly

wrong." *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)).

We find no basis in the record for reversing the trial court's credibility determinations. Jones and Loehr both testified that they were at the store at the same time and that an altercation occurred resulting in Jones's injuries. Jones testified that Loehr asked about the military fatigues he wore. The Commonwealth presented a photograph depicting an injured Jones in military fatigues. Jones testified that Loehr asked where he worked and wanted to know why he was standing in front of the store. Loehr explained that Jones was loitering and admitted that the incident occurred over Jones's repeated requests for money. Jones testified that Loehr beat him "like somebody was crazy." Loehr admitted he continued to pummel Jones with his fists until he got the better of Jones and stopped fighting. The only discrepancy in their respective testimonies was whether or not Jones begged Loehr for money and then struck him in the face as Jones walked past. Even so, rather than make any specific factual findings on that discrepancy, the trial court considered the differences in their ages and sizes and the serious nature of Jones's resulting wounds before rejecting the notion (or argument) of Loehr. Because the trial court's resolution on the credibility of the witnesses is not plainly wrong, we leave them undisturbed.

### B. Self-Defense

"If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony." Code § 18.2-51.

"Malice inheres in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). It is "evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act

- 10 -

without any or without great provocation." *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020) (quoting *Branch v. Commonwealth*, 14 Va. App. 836, 841 (1992)). Malice "may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." *Ramos v. Commonwealth*, 71 Va. App. 150, 162 (2019) (quoting *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013)). Thus, "malice may be either express or implied by conduct." *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019) (quoting *Essex v. Commonwealth*, 228 Va. 273, 280 (1984)). Furthermore, our case law makes clear that "an assault with a bare fist may be attended with such circumstances of violence and brutality that [malice] may be presumed." *Ramos*, 71 Va. App. at 162 (alteration in original) (quoting *Fletcher v. Commonwealth*, 209 Va. 636, 640 (1969)).

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). To establish self-defense, "a defendant must show that he reasonably feared death or serious bodily harm at the hands of his victim." *Hines v. Commonwealth*, 292 Va. 674, 679 (2016). "Whether the danger is reasonably apparent is judged from the viewpoint of the defendant at the time of the incident." *Id.* "The defendant must also show that he was in imminent danger of harm, that is, a showing of an overt act or other circumstance that affords an immediate threat to safety." *Id.* Additionally, "the amount of force used must be reasonable in relation to the harm threatened." *Diffendal v. Commonwealth*, 8 Va. App. 417, 421 (1989).

"Virginia law recognizes two forms of self-defense to criminal acts of violence: self-defense without fault ("justifiable self-defense") and self-defense with fault ("excusable self-defense")." *Bell v. Commonwealth*, 66 Va. App. 479, 487 (2016).

- 11 -

Justifiable self-defense occurs "where a person, without any fault on his part in provoking or bringing on the difficulty," acts under a reasonable fear of death or serious bodily injury. *Jones v. Commonwealth*, 71 Va. App. 70, 94 (2019) (quoting *Bell*, 66 Va. App. at 487). The accused may not claim justifiable self-defense if he "'is even slightly at fault' in creating the difficulty" leading to the incident. *Id.* (quoting *Smith*, 17 Va. App. at 71).

Excusable self-defense occurs "where the accused, although in some fault in the first instance in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace, and [acts] . . . from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm." *Bell*, 66 Va. App. at 487 (quoting *Bailey v. Commonwealth*, 200 Va. 92, 96 (1958)). "Any form of conduct by the accused from which the fact finder may reasonably infer that the accused contributed to the affray constitutes 'fault.'" *Jones*, 71 Va. App. at 94-95 (quoting *Smith*, 17 Va. App. at 71).

The evidence proved that Loehr was at fault in bringing on the fight. When Loehr pulled up in his truck, Jones was simply standing outside a convenience store in a military uniform. Loehr's questions about the uniform Jones wore, where he worked, and why he was standing outside the store were unnecessary and not provocative. Indeed, Jones felt that "something was wrong" with the way Loehr was acting and entered the store. Loehr followed Jones into the store and conducted himself in a manner so upsetting that Jones yelled for the clerk to call the police. Loehr then struck Jones in the back of the head and as Jones fell to the ground, Loehr continued to beat him repeatedly with his fists resulting in serious facial injuries to Jones. Loehr did not stop pummeling Jones until he got the better of him and when it was fair to say that he had "won the fight." Jones's testimony, accepted as truthful, refuted Loehr's assertion that he acted justifiably in bringing on the fight.

The evidence also did not support a finding that Loehr's actions were excusable. Even were the trial court to accept Loehr's claim that Jones repeatedly asked for money and then struck him on

- 12 -

the side of the face as he walked past, Loehr did not retreat or otherwise seek the peace. Rather, he immediately attacked Jones and admittedly beat him repeatedly with both fists until he won the exchange. The beating Jones received for merely asking for change and hitting Loehr (pursuant to Loehr's testimony) when Loehr told him to get "the fuck out of [his] face," was excessive, intentional, and unnecessary. The trial court's conclusion that Loehr did not act in self-defense is neither plainly wrong nor without evidence.

### C. Intent to Maim, Disfigure, Disable, or Kill

When a statute "makes an offense consist of an act combined with a particular *intent*, such *intent* is as necessary to be proved as the act itself, and it is necessary for the intent to be established as a matter of fact before a conviction can be had." *Vincent v. Commonwealth*, 276 Va. 648, 652 (2008) (quoting *Dixon v. Commonwealth*, 197 Va. 380, 382 (1955)). "Intent is the purpose formed in a person's mind which may, *and often must*, be inferred from the facts and circumstances in a particular case." *Commonwealth v. Perkins*, 295 Va. 323, 330 (2018) (quoting *Burton v. Commonwealth*, 281 Va. 622, 626-27 (2011)). As with malice, "[t]he state of mind of an alleged offender may be shown by his acts and conduct." *Id.* (quoting *Burton*, 281 Va. at 627). Moreover, "[i]t is permissible for the fact finder to infer that every person intends the natural, probable consequences of his or her actions." *Ellis v. Commonwealth*, 281 Va. 499, 507 (2011). Thus, "[i]t is proper for a court to consider not only the method by which a victim is wounded, but also the circumstances under which that injury was inflicted in determining whether there is sufficient evidence to prove an intent to maim, disfigure, disable or kill." *Burkeen*, 286 Va. at 260-61.

In this case, the trial court found that Jones was elderly and of a small stature compared to the much younger Loehr, who weighed 185 pounds and by his own testimony was "pretty strong." The evidence proved that Loehr, largely unprovoked, repeatedly punched Jones in the face like a "crazy" person, over and over again with such force that he broke Jones's nose. Blood also trickled

from Jones's ear, and a photograph admitted at trial depicted Jones's left eye completely swollen shut and gashes to his forehead that ultimately required stitches. At the time of trial, Jones was still "mentally messed up," had trouble sleeping, and suffered recurring headaches. The mere fact that Loehr used his bare fists does not prohibit a finding that Loehr acted with the requisite intent under the statute. It has long been the rule in this Commonwealth that "an assault with the bare fist may be attended with such circumstances of violence and brutality that an intent to [maim, disfigure, disable, or] kill will be presumed." *Williams v. Commonwealth*, 13 Va. App. 393, 395 (1991) (quoting *Roark v. Commonwealth*, 182 Va. 244, 250 (1944)); *see also Johnson v. Commonwealth*, 53 Va. App. 79, 101 (2008). Such circumstances of violence and brutality were on display here. The evidence supported the trial court's finding that Loehr acted with the intent to maim, disfigure, disable, or kill.

CONCLUSION

The trial court accepted Jones's testimony and rejected Loehr's version of events. That credibility determination is not plainly wrong, especially because Jones came away from the exchange with a broken nose, extensive facial injuries, and recurring headaches. With the testimony resolved in the Commonwealth's favor, the evidence sufficiently proved that Loehr committed malicious wounding. We therefore find no error in the judgment and affirm.

*Affirmed.*